UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GN RESOUND A/S, a corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>CALLPOD, INC., a corporation,<br><br>    Defendant. | Case No: C 11-04673 SBA<br><br>**ORDER**<br><br>Docket 45, 47, 48 |

On September 20, 2011, Plaintiff GN Resound A/S ("Plaintiff") filed the instant patent infringement action against Defendant Callpod, Inc. ("Defendant"). The parties are presently before the Court on Defendant's motion to strike Plaintiff's amended infringement contentions and for a protective order. Dkt. 45. Defendant opposes the motion. Dkt. 52. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's motion to strike and GRANTS Defendant's motion for a protective order, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.  **BACKGROUND**

Plaintiff is a Denmark corporation that produces "hearing devices and audiological instrumentation." First Am. Compl. ("FAC") ¶¶ 3, 10, Dkt. 22. Plaintiff owns U.S. Patent No. 7,027,603 B2 ("the '603 patent") on "Ear Level Noise Rejection Voice Pickup Method and Apparatus," which is generally directed towards "systems and methods related to sound capture, and in particular to capturing a user's voice sounds." Id. ¶¶ 11-12.

Defendant is an Illinois corporation with its principal place of business in Illinois. FAC ¶ 4. Defendant designs, develops, manufactures, sells, offers to sell, and/or imports

into the United States the Onyx, Vetro, and Dragon headset products (collectively, the "Accused Products"). Id. ¶¶ 5, 18. According to Plaintiff, "[t]he Accused Products are a sound capture system for capturing diffracted sound emitted by a source at a surface." Id. ¶ 19. Specifically, they have "a directional microphone, or the equivalent of a directional microphone, that is located near the surface," that "has an axis of maximum sensitivity that is tangential to the surface and directed towards the source of diffracted sound," and that "captures the diffracted sound traveling along the surface." Id. ¶¶ 20-22.

Plaintiff alleges that the Accused Products infringe claims of the '603 patent. See FAC ¶¶ 18-27. More specifically, Plaintiff alleges that Defendant: (1) has infringed and continues to infringe claims of the '603 patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling (directly or through intermediaries), and/or importing the Accused Products consisting of headsets, including the Onyx, Vetro, and Dragon models, in this district and elsewhere in the United States, and/or (2) has contributed and continues to contribute to the literal infringement and/or infringement under the doctrine of equivalents of claims of the '603 patent, and/or has actively induced and continues to actively induce others to infringe claims of the '603 patent, literally and/or under the doctrine of equivalents, in this district and elsewhere in the United States. Id. ¶ 42.

By this action, Plaintiff seeks the following relief: a determination that Defendant has infringed and continues to infringe the '603 patent, an accounting of all damages sustained as a result of Defendant's infringement of the '603 patent, actual damages, "enhanced" damages for willful infringement, costs and attorneys' fees, injunctive relief, and interest. See FAC at 8-9.

## II. LEGAL STANDARD

The Patent Local Rules are applicable to the instant case because it involves a claim for patent infringement. See Patent L.R. 1-2. "The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's

infringement claims." Intertrust Techs. Corp. v. Microsoft Corp., 2003 WL 23120174, at *2 (N.D. Cal. 2003) (Armstrong, J.). Patent Local Rule ("Rule") 3-1 (the "Disclosure Rule") sets forth the requirements for disclosing asserted claims and preliminary infringement contentions.

Under the Disclosure Rule, a party claiming patent infringement must, among other things: (1) identify each claim that is being infringed; (2) identify each accused product for each claim; (3) provide a chart identifying specifically where each limitation of each asserted claim is found in each accused product; (4) specify whether infringement is literal or based on the doctrine of equivalents for each accused product; and (5) the basis for willful infringement, if alleged. Patent L.R. 3-1(a)-(c), (e), (h). Rule 3-1 takes the place of "a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." Network Caching Tech., LLC v. Novell, Inc., 67 U.S.P.Q.2d 1034, 1038 (N.D. Cal. 2002).

Rule 3-1(c) requires that a plaintiff explain how each allegedly infringing product meets each element of the plaintiff's asserted patent claim. Intertrust, 2003 WL 23120174, at *2. This requires that a plaintiff compare an accused product to its patents on a claim by claim, element by element basis for at least one of defendant's products. Id. To make such a comparison, "a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." Id.; see also Implicit Networks, Inc. v. Hewlett-Packard Co., 2011 WL 3954809, *3 (N.D. Cal. 2011); Tessenderlo Kerley, Inc. v. Or-Cal, Inc., 2012 WL 1253178, *2-3 (N.D. Cal. 2012); Infineon Techs. v. Volterra Semiconductor, 2012 WL 4808445, *3 (N.D. Cal. 2012). The purpose of Rule 3-1 is be "nit picky, to require a plaintiff to crystalize its theory of the case and patent claims." Intertrust, 2003 WL 23120174, at *3; see Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL 775115, at *2 (N.D. Cal. 1998) (Rule 3-1(c) is designed to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."). While Rule 3-1 does not require the patent holder to produce evidence of infringement, the patent holder must map specific elements of

Defendant's alleged infringing products onto the Plaintiff's claim construction. Shared Memory Graphics LLC v. Apple, Inc., 812 F.Supp.2d 1022, 1025 (N.D. Cal. 2010); see Tessenderlo Kerley, 2012 WL 1253178, at *4 (to fulfill its Rule 3-1 obligation, a plaintiff need not provide evidentiary support but must articulate the precise way in which it believes the products to be infringing).

## III. DISCUSSION

Defendant contends that Plaintiff has violated Rule 3-1 because: (1) Plaintiff's claim charts "largely parrot" the claim language without identifying the factual basis for many of the claim limitations or disclosing the "specific link" between the claim limitations and Plaintiff's infringement contentions as required by Rule 3-1(c); (2) Plaintiff has asserted infringement under the doctrine of equivalents with blanket statements and failed to disclose any specific analysis as to the how and why of its infringement theory under the doctrine as required by Rule 3-1(e); and (3) Plaintiff has failed to disclose the basis of its willful infringement allegation as required by Rule 3-1(h). See Def.'s Mtn. at 1-3, Dkt. 45.

### A. Sufficiency of Plaintiff's Claim Charts

Rule 3-1(c) requires "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." Defendant contends that Plaintiff's claim charts fail to provide sufficient notice of Plaintiff's infringement theories in violation of Rule 3-1(c). See Def.'s Mtn. at 4-7. Specifically, Defendant argues that Plaintiff's infringement contentions do not satisfy the "reverse engineering or its equivalents" standard because Plaintiff does not point to the product itself or provide contentions based on any reverse engineering; rather, Plaintiff "recycles" a few phrases from user manuals that do not disclose the technology underlying the Accused Products. Id. at 5. In response, Plaintiff does not assert that it reverse engineered any of the products at issue or that its infringement contentions satisfy the "reverse engineering or its equivalent" standard. Instead, Plaintiff argues that it has complied with Rule 3-1(c)

- 4 -

because its chart identifies where each element of each asserted claim is found within each Accused Instrumentality, and its infringement contentions show where and how it contends each of the elements of the three claims asserted are found in each of the three products at issue. Pl.'s Opp. at 3-4.

As an example of Plaintiff's insufficient claim charts, Defendant points to Plaintiff's contentions regarding claim element 1.2 and claim element 1.3 of the accused Vetro headset product, which Defendant claims demonstrates how Plaintiff failed to articulate the precise way in which the Accused Products infringe the asserted claims. Def.'s Mtn. at 5. With respect to claim element 1.2, which requires a "directional microphone [having] an axis of maximum sensitivity that is tangential to the surface and directed towards the source of diffracted sound," Defendant asserts that Plaintiff's claim chart does not sufficiently explain: (1) "how the alleged directional microphone's axis of maximum sensitivity is tangential to the surface"; and (2) "how the alleged directional microphone's axis of maximum sensitivity is directed towards the source of diffracted sound (which Plaintiff contends is the user's mouth)" given that "the microphones that [Plaintiff] identifies as the directional microphones in the accused Vetro headset product are plainly pointed upwards, away from a user's face." Def.'s Mtn. at 5-6 (citing Chang Decl., Exh. F at 2, Dkt. 46).[1]

In its claim chart for the accused Vetro headset product, Plaintiff contends as follows with respect to claim element 1.2:

> The directional microphone has an axis of maximum sensitivity that is tangential to the surface and directed towards the source of diffracted sound. For example, when the Vetro is worn on or near the ear of a user it is tangential to the user's head and the directional microphone is directed to the user's mouth to capture the user's speech at the axis of maximum sensitivity. The mouth is the initial source [sic] the diffracted sound, and sound is diffracted as it arrives at the microphone by the cheek of a user

---

[1] Defendant notes that while Plaintiff's claim chart alleges that the Vetro's microphones have a "directional axis of maximum sensitivity" as explained in a video posted on Defendant's website, Plaintiff does not identify which part of the video allegedly explains Plaintiff's contention regarding claim element 1.2. Def.'s Mtn. at 5. Defense counsel attests that he has reviewed the referenced video numerous times and could not identify anything in the video that identifies the microphone's axis of maximum sensitivity. Id. (citing Chang Decl. ¶ 10.)

> wearing the headset. The directional microphone is on the top surface of the Vetro as shown in the video and photos available at http://www.callpod.com/products/vetro, which also shows the headset with directional microphone being worn over the ear and near the face/check of a user, and tangential to the cheek/face of the user and directed [sic] the mouth. The microphones have a directional axis of maximum sensitivity as is explained in the video posted at http://www/callpod.com/products/vetro.

Chang Decl., Exh. F at 2.

Plaintiff's contention regarding claim element 1.2 does not provide the specificity required by Rule 3-1(c). Plaintiff's chart does not adequately explain Plaintiff's theory of how the Vetro headset product infringes this claim element. Plaintiff has not articulated with sufficient specificity how the Vetro headset product satisfies the limitation that the "directional microphone has an axis of maximum sensitivity that is tangential to the surface and is directed towards the source of diffracted sound." Plaintiff has failed to specifically identify the microphone's "axis of maximum sensitivity" or adequately explain the basis for its contention that the Vetro headset product, which has a directional microphone "on the top surface," contains a directional microphone with "an axis of maximum sensitivity" that is both "tangential to the surface and directed toward the source of the diffracted sound," i.e., the user's mouth. Plaintiff's contention does not provide the level of detail that the "reverse engineering or its equivalent" standard requires. Intertrust, 2003 WL 23120174, at *2-3 (noting that the purpose of Patent Local Rule 3-1 is to be "nit picky," to require a plaintiff to crystalize its theory of the case and patent claims).

To the extent Plaintiff attempts to comply with Rule 3-1(c) by asserting that the "microphones have a *directional axis of maximum sensitivity* as is explained in the video posted at http://www/callpod.com/products/vetro," the Court finds this assertion insufficient to satisfy Rule 3-1(c). First, directing Defendant to a video, without describing the content of the video or explaining how the content of the video supports its infringement contention, is inadequate to satisfy Rule 3-1(c). Second, as pointed out by Defendant, a "directional axis of maximum sensitivity" is not a claim limitation. Plaintiff has not explained in its chart or in its opposition how this phrase relates to claim element

1.2 or otherwise specifically identified and described the microphone's "axis of maximum sensitivity."

As for claim element 1.3, which requires a "directional microphone [that] captures the diffracted sound traveling along the surface," Defendant contends that Plaintiff has failed to adequately explain its infringement theory as to how the alleged microphone, which plainly points upwards and away from the user's mouth, could capture diffracted sound traveling along the side of the user's face, i.e., the surface.  Def.'s Mtn. at 7.  Plaintiff has failed to oppose Defendant's motion in this regard, which the Court construes as a concession that this claim element does not satisfy Rule 3.1(c).  However, for purposes of providing Plaintiff with guidance on how to amend its infringement contentions, the Court will dispose of Defendant's argument on the merits.

In its claim chart for the Vetro headset product, Plaintiff contends as follows with respect to claim element 1.3:

> When worn on a user's head during use, the Vetro headset's directional microphone captures sound, such as a user's voice, as it travels along the side of the user's face/head.  This voice or speech is diffracted as it travels along the surface.  The directional microphone is on the top surface of the Vetro as shown in the video and photos available at http://www.callpod.com/products/vetro, which also shows the headset with directional microphone being worn over the ear and near the face/cheek of a user and which captures the sound that comes from the user's mouth along the surface of the user's cheek as it is diffracted by the user's face/cheek. http://www.callpod.com/products/vetro.

Plaintiff's contention regarding claim element 1.3 does not sufficiently explain Plaintiff's theory of how the Vetro headset product infringes this claim element.  Plaintiff failed to articulate the precise manner in which the directional microphone of the Vetro headset product, which is "on the top surface" of the product, "captures the diffracted sound traveling along the surface," i.e., the side of the user's face/head.  Plaintiff's contention does not provide the level of detail that "reverse engineering or its equivalent" requires.  Intertrust, 2003 WL 23120174, at *2-3 (noting that the purpose of Patent Local Rule 3-1 is to be "nit picky," to require a plaintiff to crystalize its theory of the case and patent claims.).

Accordingly, for the reasons stated above, Defendant's motion to strike under Rule

3-1(c) is GRANTED.  However, because it is not clear at this juncture that the deficiencies identified above cannot be cured, Plaintiff shall have thirty (30) days to amend its contentions.  In its moving papers, Defendant argues that claim elements 1.2 and 1.3 "are present in all asserted claims and [Plaintiff's] contentions are thus deficient with regards to all asserted claims."  Def.'s Mtn. at 7.  Additionally, Defendant argues that it was "unable to identify in the video [Plaintiff's] alleged support for claim limitations 1.3, 8.2, 8.3., 8.4, 14.2, 14.3, 14.4, and 14.5 for the accused Vetro product."  Id. at 5, n. 3.  In response, Plaintiff incorrectly asserts that Defendant only argues that Plaintiff failed to provide sufficient specificity with respect to one claim element (i.e., claim element 1.2) in one product of the three at issue.  Pl.'s Opp. at 4.  In its reply brief, Defendant clarifies that it used claim element 1.2 as an exemplar to highlight the deficiencies of Plaintiff's infringement contentions and that Plaintiff's disclosure with respect to claim elements 1.3, 8.2, 8.3., 8.4, 14.2, 14.3, 14.4 and 14.5 are similarly deficient.  Def.'s Reply at 4.

Because the parties did not provide specific argument with respect to any claim element other than claim elements 1.2 and 1.3, the Court declines to rule on the sufficiency of Plaintiff's infringement contentions with respect to claim elements 8.2, 8.3., 8.4, 14.2, 14.3, 14.4 and 14.5.  However, to the extent the deficiencies identified by the Court are present in Plaintiff's infringement contentions regarding claim elements 8.2, 8.3., 8.4, 14.2, 14.3, 14.4, and 14.5, Plaintiff shall amend its infringement contentions to correct those deficiencies.

**B.     Doctrine of Equivalents**

Defendant contends that Plaintiff's attempt to assert claims under the doctrine of equivalents with blanket statements violates Rule 3-1(e).  Def.'s Mtn. at 7-9.  In response, Plaintiff contends that Rule 3-1(e) only requires that it state whether it claims the doctrine of equivalents applies on a claim-by-claim basis.  Pl.'s Opp. at 8.

Under the doctrine of equivalents, "a product or process that does not literally infringe upon [sic] the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the

claimed elements of the patented invention." Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998) (alteration in original) (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)).  A finding of infringement under the doctrine may occur "if every limitation of the asserted claim, or its 'equivalent,' is found in the accused subject matter, where an 'equivalent' differs from the claimed limitation only insubstantially."  Id.; see Dawn Equip. Co. v. Ky. Farms, Inc., 140 F.3d 1009, 1015 (Fed. Cir. 1998) ("[T]o establish infringement under the doctrine of equivalents, the accused device must be shown to include an equivalent for each literally absent claim limitation.").

Under Rule 3-1(e), a party asserting infringement must disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."  A party asserting infringement under the doctrine of equivalents must provide specific analysis, on an element-by-element basis, as to its theory of why there is infringement under the doctrine.  See Implicit Networks, 2011 WL 3954809, at *3; see also Optimumpath, LLC v. Belkin Int'l, Inc, 2011 WL 1399257, at *8 (N.D. Cal. 2011) (noting that "judges of this court have rejected plaintiffs' attempts to assert claims under the doctrine of equivalents with blanket statements"); Rambus Inc. v. Hynix Semiconductor Inc., 2008 WL 5411564, at *3 (N.D. Cal. 2008) ("The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation."); MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp., 2004 WL 5363616, *4–6 (N.D. Cal. 2004) (Armstrong, J.) (blanket statement asserting infringement under the doctrine of equivalence does not comply with Rule 3-1).

A review of Plaintiff's chart reveals that it attempts to assert infringement under the doctrine of equivalents with blanket statements.  See Dkt. 46-4, 46-5, 46-6.  Courts in this district, however, have rejected attempts to invoke the doctrine of equivalents through blanket statements without providing "specific analysis, on an element-by-element basis, as to its theory of why there is infringement under the doctrine of equivalents."  See, e.g., Implicit Networks, Inc., 2011 WL 3954809, at *3 ("If Implicit actually intends to assert the

doctrine of equivalents for infringement, it must provide an element-by-element explanation of why and how in its claim charts"). Accordingly, the Court finds that Plaintiff's blanket statements of infringement under the doctrine of equivalents are insufficient to satisfy Rule 3-1(e). Therefore, Defendant's motion to strike for failure to comply with Rule 3-1(e) is GRANTED. Plaintiff shall have thirty (30) days to amend its contentions to address this deficiency.

### C.   Willful Infringement

Defendant contends that Plaintiff has failed to disclose the basis of its willful infringement claim in violation of Rule 3-1(h). Def.'s Mtn. at 9-10. Rule 3-1(h) requires that "[i]f a party claiming patent infringement alleges willful infringement, the basis for such allegation [must be disclosed]." Patent L.R. 3-1(h). Plaintiff's Rule 3-1 disclosure states, in part, as follows:

> Despite knowing that [Defendant's] Accused Products contained technology and patented inventions that were not owned by [Defendant], [Defendant] failed to secure permission from the rightful holders of such patented technology incorporated in [Defendant's] Accused Products. Because [Defendant] has been a licensor of patented technology, it was obvious to [Defendant], known by [Defendant], or should have been known to [Defendant] that before making and/or offering to sell its Accused Products that [Defendant] needed to obtain permission to use patented inventions incorporated in or practiced by the Accused Products including the '603 Patent, before proceeding to make, sell, offer to sell, or import into the United States the Accused Products.

Dkt. 46-3 ¶ H.

The Court finds that Defendant has failed to demonstrate that Plaintiff has not complied with Rule 3-1(h). The plain language of Rule 3-1(h) simply requires Plaintiff to disclose the basis for its allegation of willful infringement. To the extent Defendant argues that Plaintiff's contention is insufficient because it does not disclose sufficient facts to state a cognizable claim for willful infringement, the Court rejects this argument. Defendant has not cited any authority holding that a disclosure under Rule 3-1(h) requires a Plaintiff to disclose facts sufficient to state a cognizable claim for willful infringement. Although not particularly clear, Plaintiff's willful infringement contention appears to claim that Defendant knew that the Accused Products contain patented inventions that were not

owned by Defendant, including the '603 patent, but failed to obtain permission to use the patented inventions prior to making and or offering to sell such products.  See Pl.'s Opp. at 9.  Because Defendant has been provided notice of the basis for Plaintiff's willful infringement claim, the Court declines to strike Plaintiff's willful infringement contention.  To the extent Defendant believes the operative complaint fails to state a claim for willful infringement, Defendant may file the appropriate motion under the Federal Rules of Civil Procedure.

### D. Stay of Discovery

Finally, Defendant seeks a protective order postponing "its obligations to make Rule 3 disclosures and relevant discovery obligations" until 30 days after Plaintiff provides infringement contentions that comply with the Patent Local Rules.  Def.'s Mtn. at 11.  Courts generally will stay a patent defendant's discovery obligations until the plaintiff meets the burden of providing infringement contentions compliant with Rule 3-1.  See, e.g., Infineon Techs., 2012 WL 4808445, at *5 (citing cases).  Accordingly, Defendant's discovery obligations are stayed until 30 days after Plaintiff meets its burden to comply with Rule 3-1.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to strike is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent it seeks to strike Plaintiff's infringement contentions for failure to comply with Rule 3-1(c) and Rule 3-1(e). The motion is denied to the extent it seeks to strike Plaintiff's infringement contentions for failure to comply with Rule 3-1(h).

2. Within thirty (30) days from the date this order is filed, Plaintiff shall provide Defendant with amended infringement contentions addressing the deficiencies identified in this order.  Prior to filing any future motion regarding the sufficiency of Plaintiff's amended infringement contentions, the parties shall meet and confer for the purpose of resolving any disputes.

3.   Defendant's motion for a protective order is GRANTED.  Defendant's discovery obligations under the Patent Local Rules are stayed until 30 days after Plaintiff satisfies its burden to comply with Rule 3-1.

4.   This order terminates Docket 45, 47, 48.

IT IS SO ORDERED.

Dated: 3/21/13

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge