1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

8

| GN RESOUND A/S, a corporation, | Case No: C 11-04673 SBA |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION FOR SANCTIONS** |
| vs. | Docket 60 |
| CALLPOD, INC., a corporation, | |
| Defendant. | |

9
10
11
12
13
14
15
16
17
18
19
20
21
22

Plaintiff GN Resound A/S ("Plaintiff") brings the instant patent infringement action against Defendant Callpod, Inc. ("Defendant") alleging infringement of U.S. Patent No. 7,027,603 B2 ("the '603 patent"). The parties are presently before the Court on Defendant's motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Dkt. 60. Plaintiff opposes the motion. Dkt. 67. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Defendant's motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.     BACKGROUND

23
24
25
26
27
28

Plaintiff is a Denmark corporation that produces "hearing devices and audiological instrumentation." First Am. Compl. ("FAC") ¶¶ 3, 10, Dkt. 22. Plaintiff owns the '603 patent on "Ear Level Noise Rejection Voice Pickup Method and Apparatus," which is generally directed towards "systems and methods related to sound capture, and in particular to capturing a user's voice sounds." Id. ¶¶ 11-12.

Defendant is an Illinois corporation with its principal place of business in Illinois. FAC ¶ 4.  Defendant designs, develops, manufactures, sells, offers to sell, and/or imports into the United States the Onyx, Vetro, and Dragon headset products (collectively, the "Accused Products").[1] Id. ¶¶ 5, 18.  According to Plaintiff, "[t]he Accused Products are a sound capture system for capturing diffracted sound emitted by a source at a surface." Id. ¶ 19.  Specifically, they have "a directional microphone, or the equivalent of a directional microphone, that is located near the surface," that "has an axis of maximum sensitivity that is tangential to the surface and directed towards the source of diffracted sound," and that "captures the diffracted sound traveling along the surface." Id. ¶¶ 20-22.

Plaintiff alleges that the Accused Products infringe claims of the '603 patent. See FAC ¶¶ 18-27.  More specifically, Plaintiff alleges that Defendant: (1) has infringed and continues to infringe claims of the '603 patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling (directly or through intermediaries), and/or importing the Accused Products consisting of headsets, including the Onyx, Vetro, and Dragon models, in this district and elsewhere in the United States, and/or (2) has contributed and continues to contribute to the literal infringement and/or infringement under the doctrine of equivalents of claims of the '603 patent, and/or has actively induced and continues to actively induce others to infringe claims of the '603 patent, literally and/or under the doctrine of equivalents, in this district and elsewhere in the United States. Id. ¶ 42.

By this action, Plaintiff seeks the following relief: a determination that Defendant has infringed and continues to infringe the '603 patent, an accounting of all damages sustained as a result of Defendant's infringement of the '603 patent, actual damages, "enhanced" damages for willful infringement, costs and attorneys' fees, injunctive relief, and interest. See FAC at 8-9.

///

---

[1] The Accused Products are Bluetooth headsets.  Def.'s Mtn. at 3.

**II.**     **DISCUSSION**

    **A.**     **Legal Standard**

The Federal Circuit applies the law of the relevant regional circuit in determining whether a patentee's conduct violates Rule 11. <u>Intamin Ltd. v. Magnetar Techs., Corp.</u>, 483 F.3d 1328, 1337 (Fed. Cir. 2007). In the Ninth Circuit, Rule 11 imposes a duty on attorneys to certify by their signature that a pleading is well-grounded in fact, has a basis in law, and is not filed for an improper purpose. <u>Id.</u> at 1337-1338. Rule 11 authorizes both monetary and nonmonetary sanctions, but any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(4). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." <u>Operating Eng'rs Pension Trust v. A-C Co.</u>, 859 F.2d 1336, 1345 (9th Cir. 1988). It should be reserved for "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." <u>Id.</u> at 1344. "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." <u>Id.</u> A district court's decision regarding Rule 11 sanctions is reviewed for an abuse of discretion. <u>Intamin</u>, 483 F.3d at 1337.

Under Ninth Circuit law, sanctions must be imposed on the signer of a paper if either (1) the paper is filed for an improper purpose, or (2) the paper is "frivolous." <u>Intamin</u>, 483 F.3d at 1338 (quotation marks omitted). With regard to complaints, a complaint is not filed for an improper purpose if it is "non-frivolous." <u>Id.</u> The Ninth Circuit defines a "frivolous" pleading for Rule 11 purposes as one that is legally or factually baseless from an objective perspective and made without a reasonable and competent inquiry. <u>Id.</u> The central purpose of Rule 11 is to deter baseless filings. <u>View Engineering, Inc. v. Robotic Vision Systems, Inc.</u>, 208 F.3d 981, 984 (Fed. Cir. 2000). An attorney may not be sanctioned under Rule 11 for a complaint that is not well-founded, so long as he conducted a reasonable inquiry. <u>In re Keegan Management Co. Sec. Litig.</u>, 78 F.3d 431, 434 (9th Cir. 1996).

In the context of patent infringement actions, Rule 11 has been interpreted "to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1300 (Fed. Cir. 2004); see View Engineering, 208 F.3d at 986 ("Rule 11 . . . must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.").  It is not for the district court to determine whether plaintiff's pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous.  Q-Pharma, 360 F.3d at 1301.  "Claim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language." Id.

The key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis.  Q-Pharma, 360 F.3d at 1302.  An infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter.  Id.  "Once a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof *shifts* to the non-movant to show it made a reasonable pre-suit inquiry into its claim." Digeo, Inc. v. Audible, Inc., 505 F.3d 1362. 1368 (Fed. Cir. 2007) (emphasis in original).

### B.   Motion for Sanctions

Defendant requests the Court impose monetary sanctions against Plaintiff under Rule 11 on the grounds that Plaintiff filed infringement claims without having conducted the requisite pre-filing investigation, without factual support, and with the purposes of harassing Defendant and to needlessly increase the cost of litigation for Defendant.  Def.'s Mtn. at 1.  Defendant contends that monetary sanctions in the form of attorneys' fees and costs are warranted because "the accused products do not have the claimed directional microphone.  Rather, the accused products use omnidirectional microphones—a type of microphone that was disclosed but not claimed by the '603 patent." Id.  According to

Defendant, a simple inspection of the Accused Products would have revealed that they contain omnidirectional microphones rather than directional microphones.  Id.  Defendant further asserts that the user manuals for the Accused Products do not suggest that the products contain directional microphones.  Id.  Finally, Defendant argues that the litigation history between the parties, together with evidence showing that Plaintiff and its attorneys asserted infringement claims without a reasonable pre-filing inquiry and without factual support, indicates that this action was filed for the improper purposes of harassing Defendant and burdening Defendant with needless litigation costs.  Id.

In response, Plaintiff argues that Rule 11 sanctions are inappropriate because its counsel performed an adequate pre-filing investigation, including an extensive analysis of the claims, specifications, and prosecution history of the '603 patent, as well as an analysis of the specifications and user manuals of the Accused Products and relevant technical literature relating to directional microphones.  See Pl.'s Opp. at 1-5, 7.  Based on this analysis, Plaintiff asserts that it reasonably believed before filing suit that the Accused Products meet the "directional microphone" element in the asserted claims, i.e., the Accused Products infringe the '603 patent.  Id. at 1.  According to Plaintiff, the pre-suit investigation by its counsel showed that the Accused Products use a "Dual Mic" system, and that the product manuals and literature counsel consulted specifically show that the dual microphones were deployed in the Accused Products as a directional microphone.  Id. at 1, 3-5.  Plaintiff states that its counsel determined that the '603 patent's specification teaches that an omnidirectional microphone can be configured to operate as a directional microphone, and thus concluded that the claim term "directional microphone" could reasonably be construed to include omnidirectional microphones that have been modified or configured to be a directional microphone, as in the Accused Products.  Id. at 1, 4-5

In support of its position, Plaintiff submitted a declaration from its counsel explaining the pre-filing investigation he performed.  See Agarwal Decl. ¶¶ 6-12.  Plaintiff's counsel avers that his investigation consisted of the following: reading and analyzing the '603 patent's entire specification and claims; reading and analyzing the entire

file history of the '603 patent; reading the prior art cited in the '603 patent and the file history of a related patent from which the '603 patent stems; reviewing the product manuals for the accused Dragon and Onyx products; analyzing the publicly available literature for the Accused Products, including Defendant's published specifications for the Accused Products; reviewing and analyzing industry literature regarding the subject matter of the '603 patent[2]; and discussing and evaluating the background of the '603 patent with persons with engineering backgrounds for the purpose of understanding the technology and terms used therein and assessing the proper scope and construction of the claims. Id. ¶¶ 6-11. According to Plaintiff's counsel, during the course of his investigation and analysis, which spanned approximately six weeks, he went through every claim in the '603 patent multiple times, and applied various reasonable and alternative constructions of each element, considered whether the constructions would be helpful to a jury under the law of claim construction, and confirmed that each element would read onto the Accused Products, including in light of the manner in which Defendant's manuals disclose how the products should be used in order to function properly. Id. ¶ 12.

In reply, Defendant argues that Plaintiff's counsel's declaration confirms that Plaintiff's pre-filing investigation was inadequate because Plaintiff did not reverse engineer or analyze the Accused Products, test the Accused Products to determine whether they operated in the manner claimed by the asserted claims of the '603 patent, and did not attempt to obtain a sample of any of the Accused Products. See Def.'s Reply at 3-6. However, Rule 11 only requires an attorney to "[i]nterpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." Q-Pharma, 360 F.3d at 1300-1301. There is no requirement that a patentee must reverse engineer an allegedly infringing product to avoid a Rule 11 violation. See Intamin, 483 F.3d at 1338 (noting that there is not a blanket rule that requires a patentee to obtain a

---

[2] Plaintiff's counsel reviewed and analyzed industry literature regarding the subject matter of the '603 patent for the purpose of gaining an understanding of the background of the subject matter of the patent and also how a person of skill in the art might understand particular terms, including the term directional microphone. Agarwal Decl. ¶ 9.

sample of a product and deconstruct it to avoid violating Rule 11); see also Q-Pharma, 360 F.3d at 1302.  Nor has Defendant cited any authority holding that Plaintiff was required to test the Accused Products prior to filing suit.  See Intamin, 483 F.3d at 1338 (stating that in Q-Pharma, the court "did not impose on a patentee a Rule 11 obligation to perform a simple chemical test on a sample to determine its composition.  Instead, th[e] court found that the patentee satisfied its Rule 11 obligations with other reasonable pre-filing inquiries.").[3]

Based on the record presented, the Court finds that Plaintiff has shown that it performed an adequate pre-filing inquiry into whether the Accused Products infringe the '603 patent such that sanctions under Rule 11 are not warranted.  See Intamin, 483 F.3d at 1338.[4]  Plaintiff has submitted evidence showing that its counsel conducted an infringement analysis prior to filing suit which involved an interpretation of the asserted patent claims and a comparison of the asserted claims with the Accused Products.  See Q-Pharma, 360 F.3d at 1302 ("the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis," which "can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter").  Defendant, for its part, has not clearly shown that Plaintiff filed a "frivolous" pleading, i.e., one that is legally or factually baseless from an objective perspective and made without a reasonable and competent inquiry.[5]  At this juncture, the Court is not

---

[3] In Q-Pharma, the Court concluded that plaintiff's claim of infringement was supported by a sufficient factual basis because plaintiff obtained a sample of the accused product, reviewed Defendant's statements made in the advertising and labeling of the accused product, and, most importantly compared the claims of the patent with the accused product.  Q-Pharma, 360 F.3d at 1303.

[4] In Intamin, the Ninth Circuit held that the district court did not abuse its discretion in determining that the plaintiff's pre-filing inquiry was reasonable under the circumstances. Intamin, 483 F.3d at 1338.  In that case, the district court noted that plaintiff "evaluated the patent portfolio, analyzed the patent's validity, determined the scope of the patent's claims, and performed an infringement analysis."  Id.  The district court further noted that plaintiff "reviewed publicly available documents on [Defendant's] brakes, inspected [Defendant's] brakes as installed on a roller coaster, took photos of the brakes, and reviewed the brakes with experts."  Id.

[5] While Defendant argues that the litigation history between the parties demonstrates the "frivolity" of this lawsuit, the parties' litigation history does not speak directly to the adequacy of the pre-filing investigation at issue.

persuaded that this is the "rare and exceptional case" where the "extraordinary remedy" under Rule 11 should be exercised.

To the extent Defendant contends that Rule 11 sanctions are appropriate because Plaintiff's infringement claims fail on the merits, the Court rejects this contention. According to Defendant, Plaintiff's claims of infringement are "not well-founded" because the Accused Products contain omnidirectional microphones, not directional microphones. Def.'s Mtn. at 5-6.  Defendant also contends that Plaintiff's claims fail as a matter of law pursuant to the disclosure-dedication rule. Id. at 6.  Thus, in effect, Defendant asks this Court to dismiss this action or grant summary judgment in its favor in the guise of a motion for Rule 11 sanctions.  The Court declines to do so.  A Rule 11 motion for sanctions is not an appropriate substitute for summary judgment proceedings.  See Safe–Strap Co., Inc. v. Koala Corp., 270 F.Supp.2d 407, 412-420 (S.D.N.Y. 2003) (denying motion for sanctions in part because the motion served, "in an improper fashion, as a surrogate for a summary judgment motion"; noting that a Rule 11 motion is ordinarily determined at the end of the proceedings).  The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions . . . should not be employed . . . to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes."  Fed.R.Civ.P. 11 Advisory Comm. Notes (1993 Amendments); see Safe–Strap, 270 F.Supp.2d at 416  (Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss or a motion for summary judgment.).  "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).  Accordingly, for the foregoing reasons, Defendant's motion for sanctions under Rule 11 is DENIED.

///

///

///

**III.** **CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendant's motion for sanctions is DENIED.

2.      This Order terminates Docket 60.

IT IS SO ORDERED.

Dated: 9/27/2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge